**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KAREN C. HAN,<br><br>            Plaintiff,<br><br>v.<br><br>FINANCIAL SUPERVISORY SERVICE,<br><br>            Defendant. | Civ. Action No. 18-141(EGS/GMH) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

## I.    Introduction

Plaintiff Karen C. Han ("Ms. Han" or "Plaintiff") has sued Defendant Financial Supervisory Service ("FSS" or "Defendant"), alleging that FSS, a corporation established under the laws of the Republic of Korea ("South Korea") interfered with the contractual relationship between Ms. Han's now-defunct financial services company, Peninsula Asset Management Ltd. ("Peninsula"), and Hankook Tire Company, Ltd. *See* Complaint, ECF No. 1.[1] This lawsuit is one of a series of suits filed by Ms. Han related to a contractual relationship between Peninsula and Hankook Tire Company, Ltd., as well as its controlling shareholder Mr. Yang-Rae Cho (together, "Hankook"). On Jan. 7, 2019, the Court referred the case to a Magistrate Judge for a Report and

---

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

1

Recommendation ("R. & R.") on the pending Motion to Dismiss, and the case was randomly referred to Magistrate Judge G. Michael Harvey. *See generally*, Docket for Civ. Act. No. 18-141. Magistrate Judge Harvey issued a R. & R. recommending that this Court grant Defendant's motion, *see* R. & R., ECF No. 24 at 1; to which Plaintiff objects, *see* Pl.'s Objs., ECF No. 26.

Upon careful consideration of the R. & R. and the objections thereto, the applicable law, and the entire record herein, the Court hereby **ADOPTS** the R. & R. as to the portion on personal jurisdiction, *see* ECF No. 24; and **GRANTS** Defendants' Motion to Dismiss, *see* ECF No. 7-19.

## II.  Background[2]

The factual and procedural history of this case is complex, and it is helpful to first describe the involved parties. Plaintiff is a Texas citizen who owned a financial services company—Peninsula—that entered into an agreement (which, for reasons that will become clear, is known herein as the "Peninsula/Ocean Agreement") through which it would accomplish a financial transaction on behalf of an alleged alter-ego of the South Korean company Hankook. Compl., ECF No. 1 ¶¶ 2, 8, 19. FSS is a South Korean financial regulator that, like the United States' Securities Exchange Commission, "operates as a 'buffer'

---

[2] In the interest of judicial efficiency, the Background section is adopted mostly verbatim from Magistrate Judge Harvey's R. & R. *See* ECF No. 24, Background.

between South Korean financial institutions" and South Korea's government. *Id.* ¶ 3. Plaintiff alleges that the financial transaction that was the basis of the Peninsula/Ocean Agreement violated South Korean financial laws and regulations and that reports of Peninsula's involvement in the transaction caused measurable damage to the company's business and reputation. *Id.* ¶¶ 2, 23, 25. She further asserts that, when, during an investigation by FSS, Hankook provided FSS with a false report connected with the relevant transaction, Peninsula was forced to close because of fears that it could be criminally liable for its participation in that transaction. *Id.* ¶ 32. Peninsula therefore demanded that Hankook indemnify it pursuant to the Peninsula/Ocean Agreement for its losses. *Id.* ¶ 48. When Hankook refused, Peninsula sued Hankook, Mr. Cho, and Ocean in the 153rd Judicial District Court of Tarran County, Texas for breach of contract, and when the case was dismissed for lack of personal jurisdiction, in the Northern District of Ohio for the same claims. *Id.* ¶¶ 49-50. That action was also ultimately dismissed, and those claims form part of the underpinning of the claims at issue here. *See id.* ¶¶ 51-52.

In this case, Plaintiff asserts that FSS encouraged Hankook to breach the indemnity provision of the Peninsula/Ocean Agreement by assuring Hankook that FSS would not produce discovery that was essential to Peninsula's breach of contract

claim in the Northern District of Ohio. *Id.* ¶¶ 3-4, 52, 88.
Among the steps that FSS allegedly took in this scheme was
resisting a subpoena that Peninsula served on FSS' New York
office by improperly procuring a diplomatic note from the South
Korean Embassy that asserted that FSS was entitled to foreign
sovereign immunity as an organ of the South Korean government.
*Id.* ¶ 5. Plaintiff seeks losses caused by FSS' alleged
interference with the contractual relationship between Hankook
and Peninsula, which she measures as "the totality of the harm
[she] suffered during the entire period in which the [indemnity
provision] has remained breached," including, presumably,
recompense for the damage to her business as well as legal
expenses she has incurred in the various actions that she has
filed in connection with her claims against Hankook. *Id.* ¶¶ 6,
90.

### A. Factual and Procedural History

In 1995, Plaintiff founded Peninsula, with her husband No
Joon Park serving as director, to provide financial services to
"investment banks in international financial centers," such as
Seoul and Hong Kong. Compl., ECF No. 1 ¶¶ 17-18, 25. In late
1998, Hankook retained Peninsula to act as the agent to raise
money for Ocean Capital Investment (L) Limited ("Ocean"), an
investment fund established by Hankook in Labuan, Malaysia. *Id.*
¶ 19. The agreement between Peninsula and Ocean (the

aforementioned Peninsula/Ocean Agreement) included an
indemnification clause by which Ocean agreed to indemnify
Peninsula against "all losses, liabilities, costs, charges and
expenses (including legal fees and expenses)" incurred in
connection with, among other things, violations or alleged
violations of the laws of Malaysia, South Korea, or the United
States. *Id.* ¶¶ 2, 38; ECF No. 7-7 at 9–10; *see also Han v. Fin.
Supervisory Serv.*, No. 17-CV-4383, 2017 WL 7689223, at *1
(S.D.N.Y. Oct. 6, 2017), *report and recommendation adopted*, 2018
WL 791353 (S.D.N.Y. Feb. 8, 2018); *Peninsula Asset Mgmt. (Cay-
man), Ltd. v. Hankook Tire Co.*, No 5:04 CV 1153, 2006 WL
2945642, at *6–7 (N.D. Ohio Oct. 13, 2006) ("*Peninsula II*"),
*rev'd*, 509 F.3d 271 (6th Cir. 2007) ("*Peninsula IV*"). Among the
acts Peninsula performed on behalf of Ocean was the placement of
$20 million of zero-coupon notes with the Korea Long Term Credit
Bank and the transfer of the proceeds to Ocean's U.S. Dollar
account in New York. *Id.* ¶ 20. Ms. Han alleges that,
"[u]nbeknownst to Peninsula at that material point in time,"
Ocean was an off-the-books "slush fund" used for the benefit of
Hankook's chairman Mr. Cho, and the Korea Long Term Credit Bank
was not the purchaser of the notes. Instead, the notes were
purchased by Hankook through "a designated cash trust account"
maintained at the bank in order to perpetrate a money-laundering
scheme in which it illegally transferred $20 million from South

Korea to New York, after which "the funds could be freely transferred." Compl., ECF No. 1 ¶¶ 21-23, 26; *see also Han v. Yangrai Cho*, Civil No. 18-00277, 2019 WL 1300070, at *1 (D. Haw. Mar. 21, 2019) ("Hankook Tire and Defendant Cho allegedly used Peninsula Asset management to perpetrate a money-laundering scheme to transfer $20 million . . . out of the Republic of Korea to an account in New York."), *appeal docketed* No. 19-16073 (9th Cir. May 22, 2019); *Han*, 2017 WL 7689223, at *1 ("Unbeknownst to Han, Ocean was a 'slush fund maintained for the benefit of Hankook's Chairman, Yang-Rae Cho, and Hankook purchased the notes itself, through various subsidiaries and affiliates . . . .").

In 2001, "serious scandals involving offshore secret funds started to become widely publicized in South Korea" and "rumors began to circulate" that Peninsula had been implicated in certain illegal schemes, causing a drop in Peninsula's business. Compl., ECF No. 1 ¶ 25; *see also Peninsula II*, 2006 WL 2945642, at *4. Peninsula later allegedly became aware of the illegality of the Ocean scheme, which Ms. Han asserts exposed her, her husband, and Peninsula to potential criminal penalties. Compl., ECF No. 1, ¶¶ 26, 31; *see also Han*, 2017 WL 7689223, at *1; *Peninsula II*, 2006 WL 2945642, at *5. In November 2001, the Ministry of Finance and Economy of South Korea ordered South Korean businesses and residents to report offshore funds within

6

three months; in addition, supervisory agencies like FSS which, as noted above, is a regulator of the financial markets in South Korea, "pressed for voluntary reports and announced their intent to conduct thorough on-the-spot probes after the expiration of the grace period in February 2002." Compl., ECF No. 1 ¶ 27. Peninsula reportedly became alarmed at these developments, and, when it learned that neither Hankook or Mr. Cho had disclosed their offshore funds, "was compelled to retain counsel" and demanded that Hankook indemnify it pursuant to the Peninsula/Ocean Agreement. *Id.* ¶¶ 28-29. In July 2002, "facing the threat of potential criminal prosecution," Ms. Han and her husband decided to close Peninsula. *Id.* ¶ 31. According to Ms. Han, in August 2002, Hankook made a false report to FSS, stating that its offshore operations were for the benefit of the company, rather than Mr. Cho personally. *Id.*, ¶ 32. After FSS investigated the transactions mentioned above, *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, No. M8-85, 2005 WL 3046284, at *1 (S.D.N.Y. Nov. 14, 2005) ("*Peninsula I*"), in December 2002, the Securities and Futures Commission of South Korea allegedly levied penalties against Hankook and Mr. Cho, *id.* ¶ 33. There is no evidence that Ms. Han, her husband, or Peninsula has ever been criminally charged or otherwise sanctioned in connection with the transaction at the heart of the Peninsula/Ocean Agreement. *See Peninsula II*, 2006 WL

7

2945642, at *5 (noting that "there is no evidence . . . that
[Peninsula or Plaintiff] were sanctioned in any way for any
conduct arising out of their dealings with [Hankook]."").
Meanwhile, on September 10, 2002, Ms. Han and Peninsula again
requested indemnification from Hankook and Mr. Cho. *Id.* ¶ 48.
Hankook responded that it had not violated any laws of South
Korea in connection with the Ocean placement. *Id.* ¶ 49. Because
Ms. Han and Peninsula deemed that response to be a breach of the
indemnity provision in the Peninsula/Ocean Agreement, on October
8, 2002, Ms. Han and Peninsula filed an action alleging breach
of contract, fraud, negligent misrepresentation, and civil
conspiracy against Hankook, Mr. Cho, and Ocean in Texas state
court, which was dismissed for lack of personal jurisdiction
over the defendants. *Id.* ¶ 49. In June 2004, Ms. Han, her
husband, and Peninsula (the "Ohio Plaintiffs") filed an action
in the U.S. District Court for the Northern District of Ohio
against the same defendants alleging similar claims (the "Ohio
Action"). *Id.* ¶ 50; *see also Peninsula II*, 2006 WL 2945642, at
*1. In a nutshell, the Ohio Plaintiffs claimed that Hankook
fraudulently induced them to assist the unlawful transfer of the
$20 million that was the subject of the Peninsula/Ocean
Agreement and then refused to indemnify them for damage to
Peninsula's business caused by that illegal activity. *Peninsula
II*, 2006 WL 2945642, at *3; *see also Peninsula Asset (Cayman)*

*Mgmt., Ltd. v. Hankook Tire Co.*, Case no. 5:04-cv-1153 (N.D.
Ohio Dec. 1, 2004), Order, ECF No. 57 at 2 ("Plaintiffs claim
that defendants fraudulently and purposefully involved them in
complex, illegal money-laundering activities, under the guise of
legitimate investment activities, and as a result completely
ruined plaintiffs' business reputation. Plaintiffs seek recovery
under the indemnity provisions of the placing agreements they
had with Ocean . . .."). Hankook again denied that it had
breached any South Korean laws or regulations, asserted that FSS
had never alleged that it acted improperly or illegally, and
therefore denied that any duty to indemnify Plaintiff had been
triggered. Compl., ECF No. 1 ¶ 51. Because the question of
whether Hankook had violated South Korean financial regulations
was material to the claims and defenses in the Ohio Action, the
Ohio Plaintiffs served a subpoena *duces tecum* on FSS' outpost in
New York City requesting that it appear for a deposition and
produce documents related to its investigation of those
defendants. *Id.* ¶ 53; *see also Peninsula I*, 2005 WL 3046284, at
*1. FSS moved in the U.S. District Court for the Southern
District of New York (the "2005 New York Action") to quash the
subpoena on grounds of sovereign immunity under the Foreign
Sovereign Immunities Act, ("FSIA"), 28 U.S.C. § 1603 *et seq.*,
which the district court denied. Compl., ECF No. 1 ¶¶ 54-55; ECF
No. 1-1 at 2-4; *see also Peninsula I*, 2005 WL 3046284, at *1.

When FSS refused to comply with the subpoena, the plaintiffs asked the district court to hold it in contempt. Compl., ECF No. 1, ¶ 54-55; *see also Peninsula I*, 2005 WL 3046284, at *1. In response to that motion, on September 14, 2005, a diplomatic note (the "2005 Diplomatic Note") on the letterhead of the embassy of the Republic of Korea (the "South Korean Embassy"), which is located in the District of Columbia, was sent to the U.S. Department of State explaining that FSS was "a regulatory body of the Republic of Korea equivalent to the combination of the United States Securities and Exchange Commission and the United States Federal Reserve Board." Compl., ECF No. 1-1 at 5-6. According to the South Korean Embassy, the legislation governing FSS prohibited the agency from revealing "internal investigatory, and other files relating to a transaction in which defendant Hankook engaged." *Id.* at 6. The note continued, stating that "[i]t is of the utmost concern to the government of the Republic of Korea should FSS be held in contempt of court. It is feared that any contempt of court against FSS may bring about some undesirable effect on the relations between the government of the United States and the government of the Republic of Korea." *Id.* at 7. The note therefore requested "that the State Department take all appropriate steps to prevent FSS being held in contempt of court." *Id.* Plaintiff alleges that "FSS fraudulently enlisted the South Korean Embassy to issue the

10

[diplomatic note] by telling a lie that the Head of FSS' New York Office might be sent to jail" and that the diplomatic note was issued without proper authorization. Compl., ECF No. 1 ¶¶ 62, 65; ECF No. 10 at 18–19. On October 5, 2005, the Counselor for Finance and Economy at the Korean Embassy sent a letter to the district court in New York asserting both that FSS was "an organ of a foreign state and entitled to immunity under the FSIA" and that the statute creating FSS "imposes confidentiality on FSS and its employees." ECF No. 1-1 at 10–11. Relying in part on the 2005 Diplomatic Note as the "stated position of the Korean embassy," the district court denied the contempt motion finding that South Korean law prevented FSS' compliance with the subpoena. *Peninsula I*, 2005 WL 3046284, at *2–3 & n.2. The plaintiffs appealed the order denying sanctions for contempt and FSS cross appealed the district court's order denying it immunity under the FSIA. *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 476 F.3d 140, 141 (2d Cir. 2007) ("*Peninsula III*"). The Second Circuit affirmed the denial of the contempt motion, although on different grounds than that relied on by the lower court. *Id.* at 144. Specifically, the court "focuse[d] . . . on whether FSS is an 'organ of the Korean government'" under the FSIA, looking for guidance to *Filler v. Hanvit Bank*, 378 F.3d 213 (2d Cir. 2004). That case instructed courts considering whether an entity is an organ to a foreign government to ask

11

> (1) whether the foreign state created the
> entity for a national purpose; (2) whether the
> foreign state actively supervises the entity;
> (3) whether the foreign state requires the
> hiring of public employees and pays their
> salaries; (4) whether the entity holds
> exclusive rights to some right in the
> [foreign] country; and (5) how the entity is
> treated under foreign state law.

*Peninsula III*, 476 F.3d at 143 (alteration in original) (quoting

*Filler*, 378 F.3d at 217). Assessing those factors, the Second

Circuit found:

> First, Korea created FSS for the national
> purpose of examining, supervising, and
> investigating Korean financial institutions.
> Second, the Korean government actively
> supervises FSS by, inter alia: (1) appointing
> its governor and auditor; (2) acting through
> a related agency, FSC; and (3) regulating the
> inspection fees that FSS can collect. Third,
> FSS has the exclusive right to receive monthly
> business reports from the solvent financial
> institutions it oversees. Finally, the Korean
> government informed the State Department and
> the district court that it treats FSS as a
> government entity.

> Only one factor weighs against finding
> sovereign immunity: the Korean government
> neither requires the hiring of public
> employees for FSS positions, nor directly pays
> the salaries of FSS employees. Nonetheless, in
> light of the four other factors, this is
> insufficient to deny FSS sovereign immunity.

*Id.* Having found that the court lacked jurisdiction over a claim

against FSS, the Second Circuit held that FSS' cross appeal (on

the denial of its motion for foreign sovereign immunity) was

moot. *Id.* at 144. In October 2006, approximately three months

before the Second Circuit issued *Peninsula III*, the court in the
Ohio Action granted the defendants' motion for summary judgment
on all of the plaintiffs' claims. *Peninsula II*, 2006 WL 2945642,
at *6-13. The plaintiffs appealed to the Sixth Circuit, which
reversed the district court's judgment on jurisdictional
grounds, finding that, "because there [were] alien corporations
on both sides of the controversy"—a Cayman Islands corporation
(Peninsula) on the plaintiffs' side and a South Korean
corporation (Hankook) on the defendants' side—the case "lack[ed]
the complete diversity required for a federal court to exercise
jurisdiction under [28 U.S.C.] § 1332(a)(2)." *Peninsula IV*, 509
F.3d at 272; *see, e.g.*, *Roz Trading Ltd. v. Zeromax Grp., Inc.*,
517 F. Supp. 2d 377, 390 n.6 (D.D.C. 2007) (noting that "because
'under long-held precedent, diversity must be "complete"' . . .
the D.C. Circuit and other circuits have held that 28 U.S.C. §
1332 does 'not confer jurisdiction over a lawsuit involving an
alien on one side, and a[n] alien and a citizen on the other
side'" (first quoting *Eze v. Yellow Cab Co.*, 782 F.2d 1064, 1065
(D.C. Cir. 1986), then quoting *Saadeh v. Farouki*, 107 F.3d 52,
55 (D.C. Cir. 1997)). On remand, the district court dismissed
the case. *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire
Co.*, No. 5:04 CV 1153, 2008 WL 302370, at *3 (N.D. Ohio Feb. 1,
2008) ("*Peninsula V*").

Meanwhile, Ms. Han alleges that in 2007, her husband cooperated with FSS in an investigation of Hankook ordered by the Financial Services Commission until the Governor of FSS wrongfully ended the investigation. Compl., ECF No. 1, ¶ 45. According to Ms. Han, several major South Korean news outlets reported on the investigation and suspected that high-level employees of FSS may have conspired with Hankook to cover up unlawful acts of Hankook and Mr. Cho. *Id.* ¶ 46. Ms. Han alleges that because FSS believed that she and her husband were the source of such rumors, they "caus[ed] release of a news report" that FSS was considering filing criminal defamation charges against them and thereafter "blacklisted" Plaintiff's husband, causing him to lose an employment opportunity when FSS warned the company that had recruited him that it "would not tolerate" his employment there. *Id.* ¶¶ 46-47.

Ms. Han alleges that thereafter, in 2009, the South Korean government "announced its decision to release FSS from the designation of 'public institution' to secure autonomy and independence of FSS . . . from the government," thus "transform[ing] FSS from a civil public corporation . . . into a pure civil corporation that maintains complete independence from the government or its agencies." Compl., ECF No. 1 ¶¶ 70-71. Since that time, Ms. Han and her husband have "urged FSS and other relevant South Korean authorities such as [the Ministry of

14

Foreign Affairs and Trade] and [the Financial Services Commission] to rectify FSS' legal status as a government organ of South Korea in the United States so that Plaintiff can resume her action against Hankook," to no avail. *Id.* ¶¶ 74-78. Plaintiff also asserts that officials at the Ministry of Finance and Economy "hindered" her "efforts to seek remedies in this matter" and that the petition of Ms. Han and her husband regarding the status of FSS was batted around these agencies for years. *Id.* ¶¶ 74-78. According to Ms. Han, in 2017, "all executives of FSS" were "removed from their posts" after a corruption investigation. *Id.* ¶ 82.

Around that time, Ms. Han initiated a series of lawsuits. In June 2017, she filed an action in the U.S. District Court for the Southern District of New York (the "2017 New York Action") against FSS seeking a declaratory judgment that the entity "'is not entitled to sovereign immunity' and that FSS will be 'obligated to provide testimony or produce document[s] in its possession as requested by Plaintiff.'" *Han*, 2017 WL 7689223, at *3 (quoting the complaint in the 2017 New York Action). In September 2017, Ms. Han "re-instituted the Ohio Action" against Hankook in the Northern District of Ohio (the "2017 Ohio Action"). Compl., ECF No. 1 ¶ 80; *Han v. Hankook Tire Co.*, No. 5:17-cv-2046, 2018 WL 4104198, at *1 (N.D. Ohio Aug. 28, 2018) ("Han, although acknowledging the first action, now seeks to

assert those very same claims alleging Peninsula need not be included as a party because it is 'defunct' and she is 'the real party in interest' for Peninsula."). The 2017 New York Action was dismissed in February 2018 when the court found that Ms. Han "improperly [sought] an advisory opinion as to an unripe discovery dispute that will arise, if at all, in a case pending against another defendant in another forum"—that is, the 2017 Ohio Action. *Han*, 2018 WL 791353, at *2 (quoting *Han*, 2017 WL 7689223, at *1). Ms. Han also initiated litigation against Mr. Cho in the U.S. District Court for the District of Hawaii in July 2018 alleging that Hankook had fraudulently induced Peninsula to engage in the money-laundering scheme involving Ocean (the "2018 Hawaii Action"). *Han*, 2019 WL 1300070, at *1–2. The 2017 Ohio Action was dismissed in August 2018. The Northern District of Ohio held that Ms. Han was judicially estopped from arguing that Peninsula—the presence of which would destroy diversity—was not an indispensable party to the litigation because she had, in the earlier litigation, made the opposite argument. *Han*, 2018 WL 4104198, at *2–3; *see also Han v. Hankook Tire Co.*, No. 5:17-cv-2046, 2019 WL 2868953, at *2–6 (N.D. Ohio July 3, 2019) (denying motion for re-consideration). The 2018 Hawaii Action was dismissed for lack of jurisdiction over Mr. Cho in March 2019. *Han*, 2019 WL 1300070, at *5.

## B.   Tort Claims in This Action

In January 2018 Plaintiff filed this action against FSS for tortious interference with contract (also known as intentional interference with contract and intentional interference with contractual relations) or, in the alternative, "New York Prima Facie Tort." Compl., ECF No. 1 ¶¶ 84–93. Generally, to state a claim for intentional interference with contract, the plaintiff must show that the defendant intentionally and improperly interfered with the performance of a contract by "inducing or otherwise causing" a breach of the contract and that the plaintiff suffered damages because the contract was not performed. Restatement (Second) of Torts, § 766.[3] The elements of

---

[3] Plaintiff's complaint assumes that either the law of New York or the law of the District of Columbia will govern her tortious interference claim in this action. Compl., ECF No. 1 ¶ 85 (stating that "[t]he law of New York and the law of the District of Columbia with respect to a tortious interference claim are the same in material respects as applied to this claim"). It is not clear, however, that the laws of those two jurisdictions are the only two possibilities. In a diversity case, "the applicable choice of law rules are those of the forum state." *Samra v. Shaheen Bus. & Inv. Grp., Inc.*, 355 F. Supp. 2d 483, 496 (D.D.C. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The District of Columbia choice-of-law rule for torts takes into account "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship is centered." *Hartley v. Dombrowski*, 744 F. Supp. 2d 328, 336 (D.D.C. 2010)). Here, the pertinent jurisdictions are the District of Columbia, where FSS allegedly procured the 2005 Diplomatic Note; New York, where Plaintiff originally sued FSS; Texas, where Plaintiff resides; and South Korea, where FSS is based. In addition, the Cayman Islands might have some claim, because Peninsula, the entity

a claim for *prima facie* tort under New York law (which is the
claim pleaded in the alternative) are (1) intentional infliction
of harm that is motivated by "disinterested malevolence," (2)
causing special damages, (3) without excuse or justification,
(4) by conduct that would otherwise be lawful.[4] *Katz v.*

---

that entered into the agreement that FSS allegedly interfered
with, was incorporated there; Ohio might also have some claim,
because that is where Plaintiff sued Hankook in the action
underlying the 2005 New York Action against FSS. The parties
have not meaningfully briefed the choice-of-law question.
However, as it turns out, the tort of tortious interference with
contract in each of the relevant jurisdictions—at least the
domestic ones— generally tracks the Restatement's definition.
*See, e.g.*, *Berridge v. McNamee*, 66 N.E.3d 1266, 1279 (Ct. App.
Ohio 2016); *Palla v. Bio-One, Inc.*, 424 S.W.3d 722, 724 n.1
(Tex. App. 2014); *Futrell v. Dep't of Labor Fed. Credit Union*,
816 A.2d 793, 807 (D.C. 2003); *Joan Hansen & Co. v. Everlast
World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 111 (N.Y.
App. Div. 2002). In such a situation, the court may apply the
law of the forum. *See, e.g.*, *Intelsat USA Sales Corp. v. Juch-
Tech, Inc.*, 935 F. Supp. 2d 101, 110 (D.D.C. 2013) ("If no
conflict exists, the law of the forum— here, D.C. law—
applies.").

[4] Of the relevant domestic jurisdictions involved in this case,
it appears that only New York recognizes a separate cause of
action for *prima facie* tort. *See, e.g. Taylor v. District of
Columbia*, 957 A.2d 45, 50 (D.C. 2008) (noting that the District
of Columbia does not recognize a cause of action for *prima facie*
tort); *Greater S.W. Office Park, Ltd. v. Tex. Commerce Bank,
N.A.*, 786 S.W.2d 386, 390 (Tex. Ct. App. 1990) ("[W]e have found
no Texas cases recognizing a 'prima facie tort' (the infliction
of an intentional harm by an act which is lawful, but results in
special damage . . . ."), *superseded by statute on other grounds
as recognized in Resolution Tr. Corp. v. Westbridge Joint
Venture*, 815 S.W.2d 327 (Tex. Ct. App. 1991); *Costell v. Toledo
Hosp.*, 527 N.E.2d 858, 859-60 (Ohio 1988) (noting that Ohio does
not recognize a cause of action for *prima facie* tort); *see also
Nix v. Hoke*, 139 F. Supp. 2d 125, 132 (D.D.C. 2001)
("Plaintiff's first state law tort claim is based on the theory

*Travelers*, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017) (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002)).

Ms. Han indicates that FSS assured Mr. Cho and other employees of Hankook that it would not produce documents in the Ohio Action or the 2005 New York Action, thus scuttling a proposed deal by which Mr. Cho would indemnify the plaintiffs for expenses incurred in the Ohio Action. Compl., ECF No. 1 ¶ 53-58. She further alleges that counsel for FSS falsely claimed in court proceedings in the 2005 New York Action that if FSS were held in contempt, the head of its New York office would be jailed. *Id*. ¶ 65. According to Plaintiff, as a result of that representation, employees of FSS, along with FSS' counsel, visited the South Korean Embassy and reported that claim, thus fraudulently procuring the 2005 Diplomatic Note. *Id.* ¶¶ 64-65. She also complains that in various court proceedings FSS has continued to claim—according to her, falsely—that it is an organ of the South Korean government, thus "delay[ing] [and] hamper[ing] the resolution of her cause of action against Hankook." *Id.*, ¶ 80. As a result of FSS' interference, which she alleges has caused Hankook to refuse to indemnify her, she

---

of prima facie tort. Plaintiff concedes that Ohio law does not recognize such a claim.").

claims her business suffered economic and reputational harm and
that she has incurred legal expenses in the amount of
approximately $2 million. *Id.* ¶¶ 6, 90, 93. From these
allegations she seeks to show: (1) that FSS tortuously
interfered with the contract between Peninsula and Ocean—
specifically with the indemnity provision—by "inducing or
otherwise causing Hankook . . . not to honor its indemnity
obligations or intentionally procuring Hankook['s] . . . breach
of [the relevant agreement] without justification" or;
alternatively, (2) that FSS maliciously obstruct[ed] her from
procuring proof of her claims against Hankook as part of a
"vendetta . . . aimed at securing revenge" for the fact that she
uncovered "pervasive corruption" at FSS. *Id.* ¶¶ 88, 92. FSS has
filed a motion to dismiss Plaintiff's claims under Rules
12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil
Procedure. It does not argue that Plaintiff has failed to plead
the elements of her alleged causes of action. Instead, it
contends that: (1) this action is barred by claim preclusion or
issue preclusion[5] based on the Second Circuit's decision in

---

[5] Although FSS uses the terms "res judicata" and "collateral
estoppel" in its briefs, that nomenclature can be confusing
insofar as "res judicata" is used both as a general term
incorporating claim preclusion and issue preclusion (or
collateral estoppel) and as a specific term meaning only claim
preclusion. *See, e.g.*, *Koch v. Shapiro*, 699 F. Supp. 2d 3, 8 n.3
(D.D.C. 2010) ("'The doctrine of res judicata usually is parsed
into claim preclusion and issue preclusion.' A generic reference

*Peninsula III* that FSS was immune from suit under the FSIA; (2) even if Plaintiff's claims are not precluded by *Peninsula III*, FSS is, in fact, immune from suit under the FSIA as an organ of the South Korean government; (3) this Court lacks personal jurisdiction over FSS; and (4) Ms. Han's claims are barred by the statute of limitations. ECF No. 7-19; ECF No. 13. Magistrate Judge Harvey has issued a R. & R. recommending that this Court grant FSS' motion, *see* ECF No. 24; to which Ms. Han objects, *see* Pl.'s Objs., ECF No. 26. FSS has responded to the objections, *see* Mem. of Law in Opp'n to the Obj. of Pl. Karen C. Han ("Def.'s Resp."), ECF No. 28; and Ms. Han has replied, *see* Pl.'s Reply, ECF No. 29. The motion is ripe and ready for adjudication.

## III. Legal Standard

### A.   Objections to a Magistrate Judge's Report and Recommendation

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has entered a recommended disposition. Fed. R. Civ. P. 72(b)(1)-(2). A district court "may accept, reject or modify the recommended

---

to 'res judicata' typically implies 'claim preclusion.'" (quoting *NextWave Personal Comm's Inc. v. FCC*, 254 F.3d 130, 143 (D.C. Cir. 2001), and citing 18 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4402 (2d ed. 2002))). To avoid any confusion, the terms "claim preclusion" and "issue preclusion" are used throughout this decision.

disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. §
636(b)(1) ("A judge of the court may accept, reject, or modify,
in whole or in part, the findings or recommendations made by the
magistrate judge."). A district court "must determine de novo
any part of the magistrate judge's disposition that has been
properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however,
the party makes only conclusory or general objections, or simply
reiterates his original arguments, the Court reviews the [R. &
R.] only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d
86, 88 (D.D.C. 2013) (citation omitted). "Under the clearly
erroneous standard, the magistrate judge's decision is entitled
to great deference" and "is clearly erroneous only if on the
entire evidence the court is left with the definite and firm
conviction that a mistake has been committed." *Buie v. D.C.*, No.
CV 16-1920 (CKK), 2019 WL 4345712, at *3 (D.D.C. Sept. 12, 2019)
(citing *Graham v. Mukasey*, 608 F. Supp. 2d 50, 52 (D.D.C. 2009))
(internal quotation marks omitted).

Objections must "specifically identify the portions of the
proposed findings and recommendations to which objection is made
and the basis for objection." LCvR 72.3(b). "[O]bjections which
merely rehash an argument presented to and considered by the
magistrate judge are not 'properly objected to' and are
therefore not entitled to de novo review." *Shurtleff v. EPA*, 991

F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting *Morgan v. Astrue*, No.
08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)).

### B.   The FSIA

The Foreign Sovereign Immunity Act ("FSIA") governs whether
a court in the United States—federal or state—will have juris-
diction over an action against a foreign sovereign. *See, e.g.*,
*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611
(1992). The statute generally provides that "a foreign state
shall be immune from the jurisdiction of the courts of the
United States and of the States." 28 U.S.C. § 1604. As relevant
here, a "foreign state" includes "an agency or instrumentality
of a foreign state," which, in turn, is defined as "any entity"
that is (1) "a separate legal person, corporate or otherwise,"
(2) "an organ of a foreign state or political subdivision
thereof," and (3) "neither a citizen of the United States . . .
nor created under the laws of any third country." 28 U.S.C. §
1603(a)-(b). However, the statute contains several exceptions to
the general principle of foreign sovereign immunity, so that
even where it has been shown that a litigant is a foreign state
that would otherwise be immune from jurisdiction, it may still
be sued if, for example, the foreign state has waived immunity,
the action is based on commercial activity conducted by the
foreign state in the United States, or the claim seeks damages
for personal injury or death caused by acts such as torture,

extrajudicial killing, or hostage-taking from a foreign state designated as a state sponsor of terrorism. 28 U.S.C. §§ 1605(a)(1)-(2), 1605A; *see also Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) ("Under the FSIA a foreign state is immune from the jurisdiction of both the federal and the state courts, except as provided by international agreements, by nine specifically enumerated exceptions, and by certain other exceptions relating to counterclaims in actions brought by the foreign state itself." (internal citations omitted)). To "preserve the full scope" of a foreign state's immunity, "the district court must make the 'critical preliminary determination' of its own jurisdiction as early in the litigation as possible; to defer the question is to 'frustrate the significance and benefit of entitlement to immunity from suit.'" *Phoenix Consulting*, 216 F.3d at 39 (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990)).

### C.   Rule 12(b)(2) Motion to Dismiss

Under Rule 12(b)(2), a defendant may move to dismiss an action when the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). On such a motion, the plaintiff bears the burden of establishing a factual basis for the exercise of personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y.*, 894 F.2d 454, 456 (D.C. Cir. 1990). To meet this burden,

the plaintiff must allege specific facts that connect each defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). The plaintiff cannot rely merely on conclusory allegations. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003). The court may consider, receive, and weigh affidavits and other relevant materials outside of the pleadings to assist it in determining the pertinent jurisdictional facts. *U.S. v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).

A "court's exercise of personal jurisdiction over nonresidents must satisfy both the Due Process Clause and D.C.'s long-arm statute." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 173 (D.D.C. 2018) (citation omitted). To satisfy due process requirements, "a plaintiff must demonstrate that there are 'minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Swecker v. Midland Power Coop.*, 253 F. Supp. 3d 274, 278 (D.D.C. 2017) (citation omitted). The court may exercise either general or specific personal jurisdiction. *The Urban Institute v. Fincon Services*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010).

"A court with general jurisdiction may hear *any* claim against that defendant." *Brystol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). For an individual, the "paradigm forum" for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S. Ct. 2846 (2011).

In contrast, "[s]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 122 (D.D.C. 2018) (quoting *Goodyear*, 562 U.S. at 919). "[S]pecific jurisdiction exists if a claim is related to or arises out of the non-resident defendant's contacts with the forum." *Molock*, 297 F. Supp. 3d at 122. A plaintiff must demonstrate "that specific jurisdiction comports with the forums long-arm statute, D.C. Code § 13-423(a), and does not violate due process." *Id.* (citing *FC Inv. Group LC v. IFX Markets Ltd.*, 529 F.3d 1087, 1094-65 (D.C. Cir. 2008)).

## IV.  Analysis

FSS argues that this case should be dismissed because: (1) claim preclusion or issue preclusion bars this action; (2) FSS

is entitled to foreign sovereign immunity as an organ of the South Korean government and the Court therefore lacks subject matter jurisdiction; (3) FSS' activities in D.C. are insufficient for it to be subject to personal jurisdiction; and (4) Ms. Han's causes of action are time-barred. *See* Def.'s MTD, ECF No. 7-19 at 2.

Magistrate Judge Harvey recommends finding that (1) res judicata does not apply, *see* R. & R., ECF No. 24 at 21-22, 31; (2) FSS is immune from suit pursuant to the FSIA, *see id.* at 44; (3) the Court lacks general and personal jurisdiction over FSS because Ms. Han can neither show that she suffered *any* cognizable injury nor that the alleged injury occurred in D.C., *see id.* at 54-55; and (4) Ms. Han's claims are untimely and are barred by the statute of limitations of the relevant law, *i.e.*, that of D.C., *id.* at 60-62.

Ms. Han raises several objections to Magistrate Judge Harvey's R. & R., arguing that (1) the Court should provide her the opportunity for discovery and to submit additional evidence before ruling on the 12(b)(1) motion to dismiss, *see* Pl.'s Objs., ECF No. 26 at 17; (2) the Court has specific jurisdiction, *see id.* at 27; and (3) the allegations in the Complaint meet the requisite elements of continuing violations doctrine such that Ms. Han's claims are not time-barred, *see id.* at 34. Recognizing that there is no mandatory sequencing of non-

27

merits issues, *see Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584, 119 S. Ct. 1563 (1999); the Court begins by addressing the issue of personal jurisdiction. After finding that it lacks personal jurisdiction, the Court does not reach any further objections. The Court also does not address the parts of Magistrate Judge Harvey's R. & R. to which no objection is raised.

### A.   The Court Lacks Personal Jurisdiction Over FSS

For an individual, the "paradigm forum" for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is where the corporation is incorporated or has its primary place of business. *Goodyear*, 564 U.S. at 924. "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." *Texas v. Florida,* 306 U.S. 398, 424 (1939); *see also Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984). On the other hand, to establish specific personal jurisdiction, the defendant must have "minimum contacts" with D.C. *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 113 (D.D.C. 2018). "Specific jurisdiction exists if a claim is related to or arises out of the non-resident defendant's contacts with the forum." *Molock*, 297 F. Supp. 3d at 122. A plaintiff must demonstrate "that specific jurisdiction comports with the forums long-arm

statute, D.C. Code § 13-423(a), and does not violate due process." *Id.* (citation omitted).

When responding to a motion to dismiss based on personal jurisdiction, without an evidentiary hearing, a plaintiff need only make a *prima facie* showing that the court has personal jurisdiction over the defendant. *Edmond v. U.S. Postal Service General Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991). To meet this burden, the plaintiff must allege specific facts that connect each defendant with the forum. *Second Amendment Found.*, 274 F.3d at 524. Any "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane*, 894 F.2d at 456 (*citing Reuber v. United States*, 750 F.2d 1039, 1052 (D.C. Cir. 1984)).

FSS argues that this Court lacks personal jurisdiction because "FSS is a ROK entity that has at all times maintained its headquarters in Seoul, and the conduct about which Ms. Han complains [inducing Hankook to breach the Indemnity Agreement] did not occur in D.C." Def.'s MTD, ECF No. 7-19 at 28. FSS admits that the South Korean Embassy's issuance of a diplomatic note to the U.S. State Department in September 2005, regarding FSS' status as a government organ, could be seen as a wrong committed within D.C., but argues that this act is not jurisdiction conferring because: (1) a court of the United States cannot inquire into the internal operations of a foreign

government; and (2) there is no liability for tortious interference with contract caused by a citizen's petitioning the government. *Id.* at 29.

Ms. Han responds that this Court does have specific jurisdiction because the primary harm Ms. Han complains about, FSS' allegedly false representation to the South Korean Embassy that it was a government organ of South Korea, happened in D.C. Pl.'s Opp'n, ECF No. 10 at 35. Ms. Han contends that this false representation, which was the basis for the South Korean Embassy's issuance of a diplomatic note to the U.S. State Department, is jurisdiction conferring because: (1) the act of state doctrine is inapplicable since the conduct at issue took place in D.C., not South Korea, it is the acts of FSS rather than the South Korean government that she is challenging, and an application of the doctrine is foreclosed by the fraudulent petition; and (2) FSS' failure to state a right that is superior to her right to maintain an action for interference means that there is liability for tortious interference. *Id.* at 36-37.

Magistrate Judge Harvey finds that there is "no indication that this Court may exercise general personal jurisdiction over FSS." R. & R., ECF No. 24 at 47. As to specific jurisdiction, Magistrate Judge Harvey finds that FSS' reliance on the act of state doctrine is misplaced, albeit not for the reasons that Ms. Han states, but because the doctrine goes to the merits and is

"not a jurisdictional defense." R. & R., ECF No. 24 at 51; *see also Marra v. Papandreou*, 216 F.3d 1119, 1122 (D.C. Cir. 2000); *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 971 F. Supp. 2d 49, 62 (D.D.C. 2013) ("The act of state doctrine goes to the merits, and is not a jurisdictional defense."); *cf. World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (noting that the court would normally examine the question of personal jurisdiction before addressing the act of state doctrine). Magistrate Judge Harvey adds that even if the act of state doctrine were applicable here, "the validity of any act of the South Korean government is simply irrelevant to Plaintiff's claims" because the claims do not require the Court to determine the validity of the 2005 Diplomatic Note. R. & R., ECF No. 24 at 52. Instead, the claims focus on FSS' alleged misrepresentations to the South Korean Embassy. *Id.*

Nonetheless, Magistrate Judge Harvey finds that there is no personal jurisdiction because Ms. Han "cannot show that she has suffered *any* cognizable injury from the 2005 Diplomatic Note." *Id.* at 54. Magistrate Judge Harvey's reasoning is twofold. First, Magistrate Judge Harvey points out that "Plaintiff's theory appears to be that FSS' conduct in procuring that document injured her by preventing her from receiving discovery that she sought in connection with the Ohio Action against

Hankook, which led to the dismissal of that action on summary judgment because she did not have the evidence to prove her claims." R. & R., ECF No. 24 at 54. However, the Sixth Circuit reversed the lower court's decision, holding that the case should have been dismissed for lack of diversity jurisdiction. *See Peninsula IV*, 509 F.3d at 273; *see also Peninsula V*, 2008 WL 302370, at *3 (dismissing the Ohio Action on remand from the Sixth Circuit). Therefore, Magistrate Judge Harvey reasons that Ms. Han did not suffer an injury from FSS' procurement of the Diplomatic Note in D.C. since it was the lack of diversity jurisdiction that led to the failure of the Ohio Action. R. & R., ECF No. 24 at 54. Second, Magistrate Judge Harvey concludes that Ms. Han's alleged injury, if any, did not occur in D.C. because "[i]t is simply not rational for a court to find that a plaintiff suffered an injury in a jurisdiction to which she had no connection at the time of the allegedly injurious act." *Id.* at 57.

Ms. Han objects to each of these conclusions, and the Court considers her objections in turn. First, Ms. Han argues that Magistrate Judge Harvey's logic is flawed because "viewing the allegations in light favorable to Plaintiff, in the absence of the Diplomatic Note, Plaintiff must have obtained evidence from FSS and prevailed in the Ohio action, or the Ohio Action might have been settled." Pl.'s Objs., ECF No. 26 at 28. She adds that

SDNY would have awarded her with monetary relief if the Court
had granted Plaintiff's contempt motion against FSS, and she
therefore suffered monetary injury from the issuance of the
Diplomatic Note. *Id.* She also asserts that she would have
refiled the Ohio action with a state court after dismissal for
lack of diversity jurisdiction if she had procured evidence from
FSS in 2005, such that "dismissal of the Ohio action based on
the jurisdictional defect caused Plaintiff no material injury."
*Id.* Since Ms. Han's objection "specifically identif[ies] the
portions of the proposed findings and recommendations to which
objection is made and the basis for objection," Local R. Civ. P.
72.3(b); the Court reviews her objection *de novo.* The Court
concludes that Ms. Han misunderstands the relevant legal
standards.

While the Court is required to view the allegations in the
light most favorable to Plaintiff, that does not extend to using
a hypothetical victory to find injury. The Court cannot assume
that Ms. Han "must have obtained evidence from FSS," or that
SDNY would have awarded her with monetary relief, Pl.'s Objs.,
ECF No. 26 at 28; when the record clearly shows that a lack of
diversity jurisdiction is what led to the dismissal of the Ohio
action, *see Peninsula IV*, 509 F.3d at 273 (finding a lack of
diversity jurisdiction); *Peninsula V*, 2008 WL 302370, at *3
(dismissing the Ohio Action on remand from the Sixth Circuit).

33

The relevant legal question for the Court is not whether
"dismissal of the Ohio action based on the jurisdictional defect
caused Plaintiff no material injury," Pl.'s Objs., ECF No. 26 at
28; but rather whether FSS' procurement of the Diplomatic Note
caused Ms. Han an injury. Ms. Han is unable to establish such an
injury absent excessive conjecture far removed from the
boundaries of this Court's purview.

Second, Ms. Han argues that Magistrate Judge Harvey
erroneously concludes that the injury did not take place in D.C.
*See* Pl.'s Objs., ECF No. 26 at 30. Since Ms. Han reiterates her
arguments from her opposition brief, *compare* Pl.'s Objs., ECF
No. 26 at 28 *with* Pl.'s Opp'n, ECF No. 10 at 35; the Court
reviews Magistrate Judge Harvey's R. & R. only for clear error,
*see Houlahan*, 979 F. Supp. 2d at 88. The Court finds no error
here.

As Magistrate Judge Harvey observed, recognizing the proper
legal standard that "the site of the injury is the location of
the 'original events that caused the alleged injury,'" R. & R.,
ECF No. 24 at 55 (quoting *Nu Image, Inc. v. Does 1–23,322*, 799
F. Supp. 2d 34, 39 (D.D.C. 2011)); the site of Ms. Han's injury
may well be New York, where her motion for contempt was denied,
or perhaps Ohio, where her suit against Hankook was dismissed,
or even "the Cayman Islands or Texas—under the theory that a
plaintiff that claims damages from financial losses due to a

34

business-related tort 'suffers such losses at its business location,'" but it is certainly not D.C. *Id.* at 58 (quoting *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 36 (D.D.C. 2013)). The Court concludes that it lacks personal jurisdiction over FSS, both because Ms. Han has not established an injury, and because even if such an injury did exist, it would not be in D.C.

Absent personal jurisdiction, the Court need not consider FSS' remaining arguments as to subject matter jurisdiction or the statute of limitations.

## V.   Conclusion and Order

For the foregoing reasons, the Court

**ADOPTS** Magistrate Judge Harvey's R. & R., *see* ECF No. 24, as to the portions on personal jurisdiction. The Court does not find it necessary to reach any further arguments.

Accordingly, it is **HEREBY ORDERED** that

Defendants' Motion to Dismiss is **GRANTED**, *see* ECF No. 7-19.

This is a final, appealable Order. See Fed. R. App. P. 4(a).

**SO ORDERED.**

Signed:   **Emmet G. Sullivan**
**United States District Judge**
**July 5, 2022**